## DAUBER *vs.* BLACKNEY.

Where the holder of a note made by a third person turns it out in payment of his own debt, or in payment for property purchased, or for money received by him, from the person to whom he transfers it, and at the same time agrees that the note is good, or will be paid at maturity, or that it will be collected by due process of law against the maker, this is an undertaking, in substance, entirely for his own benefit and advantage, and the contract is valid even though it rest entirely in parol; and is not within the statute of frauds.

And if valid by parol, such an undertaking will be none the less valid because reduced to writing, without expressing the consideration.

THIS was an appeal by the plaintiff from a judgment of a county court, reversing a justice's judgment in favor of .the plaintiff.

*C. C. Torrance,* for the appellant.

*Wm. Woodbury,* for the respondent.

*By the Court,* HOYT, J.   The plaintiff, in his complaint before the justice, alleged that the defendant was indebted to one Ira Whitcomb in the sum of fifty dollars, for a buggy sold and delivered to the defendant, in June, 1855, and that before the commencement of the action the demand, account and cause of action was assigned to the plaintiff, and that the same had not been paid, &c.   The defendant interposed a general denial, and an allegation of payment.   On the trial

it was proved that the defendant, on the 15th of October, 1855, applied to said Ira Whitcomb to purchase a buggy. Whitcomb asked $80 for the buggy. The defendant then held a note against Nelson and Orville Bishop, of which the following is a copy :

*"Gowanda, June* 19, 1855.

$50. By the first day of January next, for value received, I promise to pay Philip Davis or bearer fifty dollars and use.

NELSON BISHOP.
ORVILLE BISHOP."

The defendant wanted to turn out this note, towards the purchase price, and wrote the following guaranty on the back of it : "I hereby guarantee the collection of the within note. Oct. 15, 1855. Seley Blackney."

Whitcomb told him he would not take the note, unless he would make it good. The defendant hesitated some time, and Whitcomb told him he would not take it unless he would do it. He said he would do it, and did. After he signed the guaranty Whitcomb took the note, and let him have the buggy. The balance the defendant was to pay in money, which he paid in a short time. About the 1st of December, 1855, Whitcomb sold the note and guaranty to the plaintiff. The note not being paid, when due, the plaintiff, in the month of January, 1856, commenced an action thereon, against the makers. The summons was served on one of the defendants on the 24th of January, and on the other defendant on the 6th of March, 1856. Judgment was perfected on the 31st day of March, and an execution was issued thereon on the 16th of April, 1856, which was subsequently returned unsatisfied.

Subsequent to the transfer of the note to the plaintiff, Whitcomb gave him a written assignment of any and all claim, demand, cause and causes of action he had against Blackney, for the buggy sold to him, and on account of his guaranty of the note made by the Bishops.

I think it sufficiently appears by the case that the plaintiff had used due diligence to collect the note in question, of the makers.  In the case of *Brown* v. *Curtiss*, (2 *N. Y. Rep.* 225,) the plaintiff had a note against the defendant, for borrowed money.  The defendant, in exchange therefor, transferred to the plaintiff a note against one G. F. Brown, and executed the following guaranty upon the back thereof : " I guarantee the payment of the within."  The court of appeals held that although the guaranty was in form a promise to answer for the debt of another, it was still in substance an engagement to pay the guarantor's own debt in a particular way, and would be good without any writing.  And it was held that the statute of frauds did not apply to such a case ; that the guarantor did not undertake as a mere surety for the maker, but on his own account, and for a consideration which had its root in a transaction entirely distinct from the liability of the maker.

The case of *Wood* v. *Wheelock*, (25 *Barb.* 625,) decided by this court, is much relied on as an authority against the right to recover in this case.  And if the decision in that case can be sustained, consistently with the cases in the court of appeals, I shall be free to concede the plaintiff cannot recover in this action.  In that case it was shown that the defendant sold to the plaintiff a note against one Anderson, received the money therefor, and indorsed on the back thereof this guaranty : " I guarantee the payment of the within note. Sylvester Wheelock."  That cause was tried before me, as a referee, and supposing it to come within the principle and class of cases sanctioned and approved in *Brown* v. *Curtiss*, a report was made in favor of the plaintiff, and the judgment was reversed by the general term of this court.  Justice Greene, who delivered the opinion in the supreme court, said that he could see no difference, in principle, between that case and the case of *Spicer* v. *Norton*, (13 *Barb.* 542.)  He says the facts of that case were that Spicer, the plaintiff, sold to the defendant a note made by one Lawton, for $500.

The defendant paid for this note, in part, by a note for $117.34 made by one Gleason. At the same time the defendant gave to the plaintiff a written agreement, reciting the transfer of the Gleason note to the plaintiff, and stating that he, the defendant, held himself accountable for the payment thereof *on condition* that the plaintiff used proper exertions to collect the same. The action was brought on this agreement, and the supreme court held that the agreement was within the statute of frauds, and gave judgment for the defendant, and the judgment was affirmed by the court of appeals. I agree that that case was in substance and in principle like the one now under consideration, so far as the statute of frauds is concerned. But it by no means follows that the court of appeals in that case held that the agreement was within the statute of frauds, from the simple fact that the judgment was affirmed by that court. It is perfectly apparent that the guaranty in that case was a guaranty of collection; and no proceedings whatever had been taken for the collection of the note, of the maker; and that point was distinctly made on the trial. The plaintiff was nonsuited, and the judgment was affirmed in the supreme court and in the court of appeals. It is true the supreme court held the guaranty to be within the statute of frauds; and it is equally clear that if the court of appeals had come to a different conclusion, the judgment must still have been affirmed, for the reason that the contract was a guaranty of collection, and no steps had been taken to collect it of the maker. The decision in that case has not, as I have been able to discover, been reported, in the court of appeals; and without the opinions, we have no means of determining on which ground the court proceeded.

In the case of *Durham* v. *Manrow*, (2 *Comst.* 535,) C. P. Durham, one of the defendants, was the holder of a note made payable to himself or bearer, executed by Ephraim Durham. C. P. Durham purchased a horse of the plaintiff, and transferred to him the note. He, with the other defend-

ant, at his request, executed a joint guaranty of its payment, not expressing any consideration. This guaranty was, by a vote of four to three of the judges of the court of appeals, held not to be within the statute of frauds, and therefore valid. Judges Strong, Ruggles, Cady and Shankland voting in favor of its validity, and Jewett, Gardiner and Hoyt against it; the latter on the ground stated by Jewett, J. in his opinion—that at all events the defendant Moulthrop was a mere surety for his co-guarantor, and no consideration being stated in the instrument, that it was void by the statute of frauds, as to him, and a joint action could not be sustained against him and Durham, under the former system of pleading. Bronson, J. did not hear the argument, and therefore took no part in the decision.

In the case of *Hall* v. *Farmer*, (2 *Comst.* 553,) Kathern & Doolittle having unsettled accounts with the plaintiff, at the date of the note in question, settled with Hall, and adjusted the amount due, and made a note for the balance found due, payable to the order of H. W. Doolittle and John Farmer, for the balance of such indebtedness, and procured the defendants Farmer and H. W. Doolittle to sign a joint guaranty of its payment, not expressing any consideration therefor. The note, on its face, was payable immediately. Jewett, Gardiner and Hoyt, judges, held that the guarantors were clearly mere sureties for the makers of the note, and as no consideration was expressed in the guaranty, it was within the statute of frauds and therefore void. Shankland, J. concurred with them in the result, but on the ground that there was in fact no consideration for the guaranty, as no new consideration passed between the parties, and there was no extension of the term of credit. Bronson, J. not having heard that case, took no part in its decision.

The next case in order, in the court of appeals, is that of *Brewster* v. *Silence*, (4 *Seld.* 207.) In that case John Thompson sold to George Silence a pair of horses, in payment for which, Silence made his note, payable the first day

of November next after the date thereof, to the order of John Thompson, for $140, and procured F. Silence to sign a guaranty upon the note, as follows: " I hereby guarantee the payment of the above note, (signed) F. Silence," and delivered the same to Thompson, in payment for the horses. This was held by the court of appeals, and very properly, to be a guaranty within the statute. F. Silence in fact as well as in form signed the guaranty as a mere surety for George Silence, on a note made by him to and payable to the order of Thompson. It was clearly a special promise to pay or become liable for the payment of the debt of G. Silence, and not a promise to pay a debt of his own, or for property purchased by himself, or for the repayment of money had by him from the party to whom the guaranty was made or delivered. This case is not, nor is the case of *Hall* v. *Farmer*, in conflict with the principle described in *Brown* v. *Curtis.*

The case of *Noel* v. *Murray,* (3 *Kern.* 168,) to which we are referred, is in no way applicable to the present case. There the defendant purchased property, for which he paid part cash, and for the residue he gave a note of a third party, taking a bill of purchase, and a receipt in full, without any agreement, either written or verbal, that the note should or would be paid. Whereas in the present case it *was* not only verbally agreed that the defendant should make the note he was transferring good, but also executed a written instrument guarantying its collection, but without expressing the consideration therefor; showing clearly that the note was not taken or intended to be taken in absolute payment of the property purchased by the defendant. And if the case does not fall within the statute of frauds, then it is quite clear that the defendant can be made liable either for the goods purchased by him, or upon the guaranty, upon the plaintiff's showing that the conditions upon which he was to become liable to pay have been complied with; which is to show that the makers were not good, and that the money could not be

collected on judgment and execution against them; so that the question of the plaintiff's right to recover would seem to depend entirely upon whether the transaction and agreement between Whitcomb and the defendant was within the statute of frauds.

The case of *Draper* v. *Snow* (20 *N. Y. Rep.* 331) was held to be identical with the case of *Brewster* v. *Silence*, (4 *Seld.* 207;) and on the authority and reasoning of that case the guaranty was held to be within the statute and void, because it did not state the consideration expressed. Still, Judge Selden, who delivered the opinion of the court in the case, does not attempt to question the decision of *Brown* v. *Curtis*. On the contrary, he says: That case was put, not upon the ground that the statute had been complied with, but that the contract did not come within the provisions of the statute, and need not have been in writing at all.

In *Church* v. *Brown*, (21 *N. Y. Rep.* 315,) the action was upon a guaranty in the following form: "I will be responsible for all such goods as Mr. White shall buy of Messrs. Church within one year from date, and which shall not be paid for according to the terms of the within contract." This guaranty was signed by the defendant, and indorsed upon a written contract between the plaintiff and White, by which the plaintiffs agreed, during one year, to sell White such articles of hardware from their store as he might desire, upon a credit of one year, with interest after six months from the time of purchase. A majority of the court of appeals very properly held that it sufficiently appeared from the terms of the guaranty that the sale and delivery of the goods by the plaintiffs to White, according to the terms of the contract on which the guaranty was written, was the consideration and a sufficient consideration, for the guaranty. The principle decided in *Brown* v. *Curtiss* is in no way questioned in that case. On the contrary, Wright, J. seems to treat that case as properly holding that the contract was in form a promise to answer for the debt or default of an-

other, and was to be so construed and treated, unless it be shown by parol proof that in substance it was an undertaking by the guarantor, for his own benefit, and upon a full consideration received by himself.

In *Cardell, executor &c.* v. *McNiel,* (21 *N. Y. Rep.* 336,) the action was on a verbal undertaking that a chattel note was *good and collectable,* which had been delivered by the defendant to the plaintiff in part payment for a horse, by which the maker, one Cornell, promised to pay $125 in a top buggy worth that amount; to be paid on the 29th of June following the date thereof, which was May 5, 1854, and that the same should be paid when due. The court held that the warranty was not within the statute of frauds. That the undertaking by parol being valid, it was not waived by the plaintiff's acceptance of the note without any written guaranty. Judge Comstock, in delivering the opinion of the court, after holding that it was to be deemed a guaranty of payment instead of collection, says: "It is claimed that the guaranty is void by the statute of frauds. In mere form it was certainly a collateral undertaking, because it was a promise that another person should perform his obligation. But looking at the substance of the transaction, we see that the defendant paid in this manner a part of the price of a horse sold to himself. In reality he undertook to pay his own vendor so much of the price of the chattel, unless a third person should make the payment for him and thereby discharge him." He further says: "The question at this time hardly claims a discussion, because it was in effect decided by this court, upon the fullest consideration, in *Brown* v. *Curtin.* The contract in that case was held valid, by the unanimous decision of the court."

It would seem that this decision should place the question at rest, that wherever the holder of a note against a third person turns it out in payment of his own debt, or in payment of property purchased, or for money received, by him, from the person to whom he transfers it, and at the same

time agrees that the note is good, or will be paid at maturity, or that it will be collected by due process of law against the maker, this is an undertaking, in substance, entirely for his own benefit and advantage, and the contract is valid although it rest entirely in parol, and is not within the statute of frauds. Of course if valid by parol, it would be none the less valid because reduced to writing expressing the consideration. If the contract is not within the statute of frauds, the consideration may clearly be shown, to uphold it, although it is not expressed therein. The only possible difference which can exist between that case and the one under consideration, so far as the statute of frauds is concerned, is that in that case it was a guaranty of payment, and in this a guaranty of collection, and that the note in that case was payable in chattels, and in this case it is payable in money. But I cannot conceive that the cases are different in principle. In the one case the defendant agreed that his vendor should be paid for the property purchased by the maker of the note, in a buggy, when the note should become due; while, in the case under consideration, the defendant agreed that his vendor should receive the purchase price of the property sold him, on a due prosecution to judgment and execution, of the maker of the note in question.

It was strenuously contended by the defendant, that inasmuch as Whitcomb had, in the first instance, transferred to the plaintiff the note and guaranty without any understanding as to their collection, and without having then assigned any claim for the buggy sold to the defendant, it operated as an extinguishment of any claim which Whitcomb might have had against the defendant, to recover the balance due for the buggy sold and delivered. But we do not see how this view of the subject can be maintained. If we are right in holding that this guaranty was not within the statute of frauds, the plaintiff, by the first transfer, had a valid claim against the defendant; and by the subsequent transfer of the cause of action for the buggy sold and upon the guar-

Dauber *v.* Blackney.

anty, he became invested with either remedy, and we think might maintain an action for the portion of the purchase money remaining in fact unpaid; especially if he offered to surrender to the defendant the note and his written guaranty. This was in effect done by executing and tendering to the defendant an assignment of the judgment he had recovered against the makers of the note, and interest. If we are right in the construction we have given to this guaranty, the plaintiff, on the proofs in the case, would have been entitled to recover thereon not only the amount of the note but the costs made by him in prosecuting the same against the maker. But he only sought to recover, before the justice, the amount of the note and interest, and that is all he did recover. The evidence entitling the plaintiff to recover was uncontroverted, and the facts proved and undisputed fully entitled the plaintiff to recover.

I have not attempted to discuss the innumerable objections raised by the defendant's counsel, on the trial. In fact they are too numerous, and most of them too frivolous, to warrant a reference to them in an opinion. Scarcely a question was put, during the whole trial, but that some kind of objection was raised. Some of them may have been objectionable in point of form, or as immaterial; but as there appears to be no controversy about the main and principal facts in the case, which are properly proved and which entitle the plaintiff to recover, we have not very closely criticised and do not propose to discuss the objections which could not affect the plaintiff's right to recover.

We think the judgment of the justice was right, and fully sustained by the evidence.

The judgment of the county court must therefore be reversed, and that of the justice affirmed.

[ERIE GENERAL TERM, November 17, 1862. *Marvin, Davis, Grover* and *Hoyt,* Justices.]